## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 20 2015, 10:21 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Anthony S. Churchward | Gregory F. Zoeller |
| Leonard, Hammond, Thoma & Terrill | Attorney General of Indiana |
| Fort Wayne, Indiana | |
| | Richard C. Webster |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel L. Spells, | March 20, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 02A03-1407-CR-264 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, | The Honorable Frances C. Gull, Judge |
| *Appellee-Plaintiff.* | Cause No. 02D06-1305-FA-21 |

**Brown, Judge.**

Daniel L. Spells appeals his sentence for attempted murder as a class A felony, as enhanced by his status as an habitual offender, carrying a handgun without a license as a class C felony, and criminal recklessness as a class D felony. Spells raises two issues which we revise and restate as:

I.   Whether the trial court abused its discretion in sentencing him; and

II.  Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

At about 9:37 p.m. on May 17, 2013, Fort Wayne Police Officer Treven Brown responded to a call regarding a domestic dispute and was given information that the suspect was possibly intoxicated, the approximate location of the suspect, and a description of the suspect. Officer Brown, who was in full police uniform, drove in his marked squad vehicle to the area where the suspect had been seen walking. Officer Brown noticed Spells walking on a street in the area and that Spells matched the description he had been given. After passing Spells, Officer Brown turned his squad car around, parked his vehicle on the side of the road a short distance behind Spells, exited the vehicle without activating his emergency lights, and walked up to Spells, greeted him, and asked for his name. Officer Brown noticed that Spells's body language was unusual, that he stood with his shoulder turned towards Officer Brown, and that he stood in what is commonly referred to as a fighting stance, a position

that a fighter or boxer would take before throwing a punch. Officer Brown asked Spells for his identification, and Spells took his identification from his rear pocket and handed it to Officer Brown. "Given that [Spells] was standing sideways [and] reached across his check [sic] and what was an unusual body movement," Officer Brown was concerned, recognized that Spells represented a danger, and he was not sure what Spells was planning to do. Transcript at 63.

[3] Officer Brown took the identification card and placed it in his belt and then took hold of Spells's left hand because he was not sure what Spells was going to do. Spells did not make any movements away from Officer Brown, but instead began to turn by pivoting his feet. As he turned, Spells drew a silver handgun from the right side of his body, extended his arm, and turned in an attempt to face Officer Brown and aim the gun at him. Spells was forcibly trying to aim the gun at Officer Brown as Officer Brown was holding his hand. Spells fired two shots which went past Officer Brown's right shoulder by about twelve inches.

[4] Officer Brown moved forward and grabbed Spells in a bear hug from behind and, in doing so, pulled Spells's arm that was extended with the gun so that it was in front of him, and they both fell to the ground. Spells fired another shot either while the men were falling to the ground or once they hit the ground. Officer Brown landed on top of Spells, who was face down with his arms and gun underneath his body. As Officer Brown attempted to keep as much pressure on Spells as he could to keep him on the ground and to obtain the gun, Spells pulled his right arm and the gun out from under his body and made

several attempts to roll his body and reach back with his gun to point it at Officer Brown. Spells fired his gun two additional times, and the shots hit a nearby house.

[5] Officer Brown was eventually able to place his hand on the top of the gun in an attempt to keep Spells from shooting it, but Spells continued to fire the gun four to six more times, injuring Officer Brown's hand, until there were no more bullets in the magazine. Officer Brown then managed to strike Spells on the wrist, pry the gun away from him, and throw it out of his reach. Spells continued to struggle, and Officer Brown was eventually able to place him in handcuffs and call for assistance.

[6] A short time after Spells was in custody, police learned that a vehicle in the area had been struck by gunfire. Officer David McCarran walked to the location where the vehicle was parked and spoke to the driver. The driver had been driving on the street when she saw Officer Brown's vehicle and then heard about two or three gunshots and saw a flash when a bullet struck the hood of her car and the side mirror. The driver backed up to another street and checked to see that the passengers in her vehicle including her daughters and granddaughter were not injured, and one of the passengers called the police.

[7] The State charged Spells, as amended, with Count I, attempted murder as a class A felony; Count II, carrying a handgun without a license with a previous conviction as a class C felony; Count III, criminal recklessness as a class D felony; and Count IV, resisting law enforcement as a class D felony. The State

also filed a notice of intent to seek a habitual offender enhancement. A jury found Spells guilty as charged on Counts I through IV and found him to be an habitual offender.

[8] At sentencing, Spells indicated he was thirty-four years old, and asked the court to consider the age and nature of his criminal history, argued that he did not have a significant history of violent offenses, and asked the court to consider his mental illness and issues which had been diagnosed. The court declined to find the age of Spells's prior offenses to be a mitigating circumstance. The court found Spells's lengthy and extensive criminal record with multiple failed efforts at rehabilitation, the nature and circumstances of the crimes, and that the victim in Count I was a law enforcement officer to be aggravating circumstances. As a mitigating circumstance, the court found that Spells "has a documented history of mental illness and mental health diagnosis of brain trauma due to a car accident in 1988, anxiety, depression, and bipolar disorder." Appellant's Appendix at 124. The court noted that the jury had the option to find Spells not responsible by reason of insanity and they declined to do so. The court found that the aggravating circumstances far outweigh the mitigating circumstances and justify not only enhanced sentences but consecutive sentences. The court sentenced Spells to fifty years for his conviction under Count I, enhanced by thirty years for his adjudication as an habitual offender, eight years for his conviction under Count II, and two years for his conviction under Count III, each to be served consecutively. The court recommended that Spells receive mental health treatment while in the Department of Correction

(the "DOC") and further recommended that he be placed in maximum security. The court vacated Spells's conviction under Count IV on double jeopardy grounds. Thus, Spells was sentenced to an aggregate term of ninety years.

## Discussion

### I.

[9] The first issue is whether the trial court abused its discretion in sentencing Spells. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[10] The determination of mitigating circumstances is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. *Id.*

[11] Spells asserts that his lack of a substantially violent criminal record and his history of mental illness are both significant and supported by the record. He argues that the court refused to give any mitigating weight to the age and substance of his criminal record and that, while the court found his mental illness to be mitigating, it appears to have given it only minimal weight. The State argues that the court exercised proper discretion in sentencing Spells, that the court did not ignore his mental health problems but simply did not weigh it as Spells desired, and that the extensiveness of Spells's criminal history negates any claim that his criminal history is mitigating.

[12] The court noted at the sentencing hearing that Spells had an extensive criminal record covering a twenty-year period from 1993 to 2013, that he was adjudicated delinquent nine times as a juvenile, that as an adult he had been

convicted of sixteen misdemeanors and eight felonies, that he had been given the opportunity of community service and probation, and that he was on parole at the time of the instant offense. The presentence investigation report (the "PSI") indicates that Spells's juvenile history includes adjudications for disorderly conduct, criminal trespass, theft, runaway, resisting law enforcement, auto theft, escape, receiving stolen auto parts, and receiving stolen property. The PSI indicates that Spells's adult history includes convictions for, among other offenses, leaving the scene of an accident as a misdemeanor in 1995; resisting law enforcement as a misdemeanor in 1998; possession of cocaine as a class D felony and resisting law enforcement as a misdemeanor in 1999; theft and battery as class D felonies and carrying a handgun without a license, resisting law enforcement, and false informing as misdemeanors in 2000; multiple counts of resisting law enforcement as class D felonies and failure to stop after accident resulting in damage to a vehicle as a misdemeanor in 2002; public intoxication and disorderly conduct as misdemeanors in 2005; criminal conversion as a misdemeanor in 2006; resisting law enforcement as a class D felony in 2007; public intoxication, public nudity, battery, and possession of marijuana as misdemeanors in 2009; and carrying a handgun without a license as a class C felony in 2010. We cannot say that the trial court abused its discretion in rejecting any claim that Spells's criminal record is substantially non-violent and deserving of significant mitigating weight.

[13] Further, to the extent Spells argues that the trial court abused its discretion by failing to give proper weight to any mental illness issues, we note that the court

found Spells's mental illness and mental health diagnoses to be a mitigating circumstance but found that the aggravating circumstances far outweigh the mitigating circumstance. As noted, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Anglemyer*, 868 N.E.2d at 491. Under the circumstances, we cannot say that the trial court abused its discretion in imposing its sentence.

## II.

[14] The next issue is whether Spells's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[15] Spells contends his sentence is inappropriate and argues that, although he had accumulated nine juvenile adjudications, sixteen misdemeanor convictions, and eight felony convictions, this court should not simply be stunned at the quantity of the convictions but should look at the nature of them. He argues that only once as an adult was he convicted of something more serious than a class D felony, and that he recognizes the violent nature of resisting law enforcement

and battery but that they remain much less serious crimes than the instant offense for which he was given the maximum sentence. He further argues that, without minimizing the incident, the nature and circumstances of this offense cannot be considered the absolute worst and that his actions were that of an intoxicated person and were random and not the product of planning or forethought.

[16] The State argues that Spells attempted to murder a police officer for no other reason than the officer approached him to speak with him, that Spells was hostile and aggressive from the outset, that he had absolutely no reason to draw or fire at Officer Brown, and that firing the gun in a populated neighborhood showed an extreme disregard for the welfare of the public at large and Officer Brown's specifically. The State further argues that Spells's character is abysmal and compels the sentence imposed, and that his history shows he is a career criminal, he has spent the majority of his life in contact with the criminal justice system, he has an inability to function in society, he has learned nothing from his past contacts with the judicial system, and he shows disdain for the authority of the courts and the rule of law. The State also argues that Spells's lack of character is established by his willingness to engage in violence and to use a deadly weapon in the manner in which he did.

[17] Our review of the nature of the offense reveals that Officer Brown approached Spells after receiving a call regarding a domestic dispute. When he approached Spells on foot, Spells took a fighting stance. Spells drew his weapon and attempted to shoot Officer Brown multiple times as Officer Brown struggled

with him and attempted to avoid being shot. The first two shots fired by Spells went over Officer Brown's shoulder by about twelve inches, and then Spells fired a third shot as the two fell to the ground, and two additional shots, which hit a nearby house, while Officer Brown attempted to pin him to the ground. When Officer Brown placed his hand on top of the gun in an attempt to keep it from firing, Spells fired the gun an additional four to six times, injuring Officer Brown's hand. All of the shots were taken within an arm's length of Officer Brown and while the two were struggling over the gun. One or more bullets struck the hood and side mirror of a vehicle which was driving nearby with four people inside.

[18] Our review of the character of the offender reveals that Spells's criminal record includes a number of adjudications and misdemeanor and felony convictions beginning as a juvenile 1993. His record includes multiple convictions for resisting law enforcement, battery, and carrying a handgun without a license. The PSI states that Spells was released to parole on January 16, 2013, about four months prior to the instant offenses, that he was currently on parole, and that he had a suspended sentence modified once and revoked five times. Under the category of physical health, the PSI states that Spells reported he is in fair health with no recurring illnesses and notes that, in a previous presentence investigation report conducted in 2010, he reported he had suffered severe brain trauma due to a car accident in 1988. Under the category of mental health, the PSI states that Spells reported he was diagnosed with anxiety in 2005 and notes that, in the previous 2010 presentence investigation report, he had reported he

had been diagnosed with depression and bipolar disorder. Under the category of substance abuse, the PSI further states that Spells admitted he used marijuana five times per month from age ten until his present incarceration and that he experimented with Spice/K2 and mushrooms. The PSI also indicates that his overall risk assessment score put him in the "very high risk" to reoffend category and that his score was high in five of seven assessment categories. *Id.* at 12. The PSI shows that the probation officer's recommendation was that Spells be sentenced to fifty years executed in the DOC on Count I, enhanced by thirty years for his adjudication as an habitual offender, eight years on Count II, and three years on Count III. The record demonstrates that Spells has had considerable contact with the court system, that he has not modified his behavior, and that he has been and continues to be willing to engage in violent behavior.

[19] After due consideration of the trial court's decision, we cannot say that the aggregate sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

## *Conclusion*

[20] For the foregoing reasons, we affirm Spells's sentence.

[21] Affirmed.

Bailey, J., and Robb, J., concur.